**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 3, 2026**

# In the Court of Appeals of Georgia

A25A1838. LEWIS et al. v. EMORY HEALTHCARE, INC. et al.

BARNES, Presiding Judge.

Tiffany Lewis, the surviving adult child of Juan Lewis, Sr. and the administrator of his estate, filed a medical malpractice action against Dr. Kany Aziz, among other defendants, concerning Juan's death two weeks after hip replacement surgery at Emory Hospital. Defendants moved to dismiss the action on the basis that the expert affidavit required by OCGA § 9-11-9.1 was insufficient. The trial court granted the motion to dismiss as to Dr. Aziz, and we granted plaintiffs' application for interlocutory review of that ruling. We now reverse because plaintiffs' expert affidavit was sufficient to withstand Dr. Aziz's motion to dismiss.

"In ruling on a motion to dismiss, the trial court must accept as true all well-pled material allegations in the complaint and must resolve any doubts in favor of the plaintiff. We review the trial court's ruling de novo." *Roberson v. Northrup*, 302 Ga. App. 405, 405 (691 SE2d 547) (2010) (citation and punctuation omitted).

So viewed, the record shows that on July 1, 2022, Dr. Nickolas Reimer performed a right hip replacement surgery on 69-year-old Juan Lewis, Sr. Immediately after surgery, Juan began experiencing adverse effects, including anemia, which was allegedly untreated for two days, and significant high blood pressure, for which he was put on four medications. Two days after surgery, Dr. Kany Aziz, the attending hospitalist, ordered an electrocardiogram ("ECG"), the results of which were inconclusive, in that multiple structures of the heart were "not well visualized."

Five days after surgery, Juan was released from the hospital. Dr. Aziz documented in her discharge notes that Juan "had been complaining of right foot pain," that he was "anxious to go home," that the "Echo show[ed] G1DD which is likely normal for his age," and that the "patient [was] medically cleared for discharge." One week later, on July 13, Juan collapsed at home and died from cardiac arrest.

Approximately two years later, on June 29, 2024, Tina Lewis, Juan's adult daughter, filed a wrongful death action against Drs. Aziz and Reimer as well as Dr. Binu Kunjummen and the doctors' employers (collectively "Defendants") claiming that their negligent post-operative care directly led to Juan's death.[1] The complaint alleged that Dr. Aziz

> failed to comport with the applicable standard of care in th[at] [s]he concluded based on the inconclusive ECG results that Mr. Lewis, Sr. could be discharged, ignoring the potential risk of cardiopulmonary complications, which increased the risk of cardiopulmonary arrest and other severe heart complications in relation to [his] heart.

Plaintiffs attached to their complaint an affidavit from Dr. Gerry Farmer, an obstetrician and gynecologist, with almost 40 years of teaching and practical experience in treating obstetrics and gynecologic patients "concerning their medical care and [s]urgical care and follow-up[.]" Dr. Farmer noted the inconclusive ECG results in his affidavit and attested that

> [w]ith multiple findings on this test being inadequate, it should not have been read as normal, yet it was. In my training and understanding, a test

---

[1] The doctors' employers, Emory Healthcare, Inc., Emory University a/k/a Emory Hospital, and The Emory Clinic were sued, respectively, under a vicarious liability theory.

like this requires further evaluation. The testing being done without immediate follow-up to clarify why important structures pertinent to cardiac activity were not visualized does not meet the standard of care . . . . ."

Defendants moved to dismiss the complaint, arguing that Dr. Farmer's expert affidavit was not sufficient under the standard provided by OCGA §§ 9-11-9.1 and 24-7-702 in that he lacked the requisite familiarity with post-operative care for orthopedic surgery patients. In response, Plaintiffs supplemented the record with the expert affidavit of Dr. Omar Hussamy, an orthopedic surgeon with 30 years of experience. In his affidavit, Dr. Hussamy averred that the medical management by Dr. Reimer and other hospital personnel at the time of surgery did not comport with the standard of care in that "Dr. Reimer's inaccurate records contributed to the hospitalists' negligent post-op care" and that the "prolonged surgery, combined with the hospitalists' post-operative care and Dr. Kunjummen's sign-off for discharge," led to Juan's subsequent death from cardiopulmonary arrest.

Following a hearing on Drs. Aziz's and Kunjummen's motions to dismiss,[2] the trial court denied Dr. Kunjummen's motion but granted Dr. Aziz's motion. Regarding Dr. Farmer, the trial court found his expert affidavit to be defective in that he "failed to show that [he] has sufficient experience in general post-operative care, and specifically, experience with patients like the Plaintiff who was recovering from orthopedic surgery and who was allegedly experiencing cardiac or cardiopulmonary complications, including the diagnosis, treatment, and determination of discharge for such patients." As for Dr. Hussamy, the trial court determined that his affidavit and curriculum vitae showed that he possessed the knowledge and experience relevant to the allegations in the complaint, and thus, that he was qualified to render his opinion regarding the purportedly negligent medical care by Drs. Kunjummen and Reimer. Notwithstanding, the court found that because Dr. Hussamy omitted Dr. Aziz from his affidavit and "provide[d] no opinion as to any . . . negligent act or omission attributed to Dr. Aziz," the case against Dr. Aziz was subject to dismissal for want of an expert affidavit in support of any professional negligence claim against her.

---

[2] Dr. Reimer and the Emory defendants withdrew their motions to dismiss after the filing of Dr. Hussamy's affidavit.

Plaintiffs filed a motion for reconsideration, which the court denied, but in so doing "refine[d] its prior holding." Specifically, the trial court explained "that it would have been more accurate to say that Dr. Aziz is not referred to by name, but merely referred to by [her] position, 'hospitalist.'" Still, the trial court reiterated that Dr. Hussamy's affidavit failed to provide a factual basis for the claims of professional negligence against Dr. Aziz. In the same order, the trial court granted a certificate of immediate review, and we granted plaintiffs' application for interlocutory review.

Plaintiffs argue that the trial court erred in dismissing Dr. Aziz from the negligence action because the affidavit from Dr. Farmer was sufficient to support their allegation of negligent post-operative care from Dr. Aziz.

Where, as here, a complaint seeks damages for professional negligence, OCGA § 9-11-9.1 (a) requires the plaintiff "to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." To qualify as a competent expert, the affiant must meet the requirements of OCGA § 24-7-702 (c), which sets forth specific guidelines governing experts in medical negligence actions. See OCGA § 24-7-702 (e). Under OCGA § 24-7-702 (c), an expert's opinion

is admissible only if, at the time of the allegedly negligent act or omission, he (1) was licensed by an appropriate regulatory agency to practice his profession in the state where he was, in fact, practicing; (2) "had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given" through either active practice over three of the last five years or teaching during the same time period; *and* (3) is either a member of the same profession as the person whose performance he is evaluating or is a doctor who supervises other medical professionals whose performance he is evaluating. Id. The Supreme Court has noted, however, that the plaintiff's expert does not need to have knowledge and experience in the same area of practice or specialty as the defendant. See *Nathans v. Diamond*, 282 Ga. 804, 806 (1) (654 SE2d 121) (2007). Instead, "the issue is whether the expert has knowledge and experience in [a] practice or specialty that is relevant to the acts or omissions that the plaintiff alleges constitute malpractice and caused the plaintiff's injuries." Id.

If the affidavit is defective and a defendant files a motion to dismiss, a plaintiff's complaint shall be dismissed for failure to state a claim, unless the plaintiff cures the defect. See OCGA § 9-11-9.1 (e). This Court has cautioned, however, that

OCGA § 9-11-9.1 imposes a pleading requirement, not an evidentiary requirement. And because OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it is to be construed in a manner consistent with the liberality of the Act so long as such a construction does not detract from the purpose of OCGA § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits. Accordingly, plaintiffs are given a wide berth to conform to the statutory requirements, and in ruling on a motion to dismiss based on an allegedly defective affidavit, a court should construe the affidavit most favorably to the plaintiff and all doubts should be resolved in the plaintiff's favor, even if an unfavorable construction of the affidavit may be possible.

*Cantrell v. AU Med. Center*, 358 Ga. App. 41, 44 (2) (853 SE2d 137) (2020) (citations and punctuation omitted).

Here, construed most favorably in plaintiffs' favor, Dr. Farmer's affidavit was sufficient to withstand the motion to dismiss. The trial court took the view that Dr. Farmer's conclusory statement that he was competent to testify "does not provide enough information for the [c]ourt to decide whether Dr. Farmer is qualified to render his expert opinion in this case." But this Court has repeatedly held that "[s]tanding alone, [an expert's] conclusory statements in her affidavit *were* legally sufficient to establish competency at the motion to dismiss stage." *Houston v. Phoebe Putney Mem. Hosp.*, 295 Ga. App. 674, 679 (1) (673 SE2d 54) (2009) (emphasis supplied); see also

*Hewett v. Kalish*, 264 Ga. 183, 186 (2) (442 SE2d 233) (1994) ("[B]ecause [plaintiff's] expert stated that he was competent to testify and because such conclusions are permissible in pleadings, the trial court erred by dismissing the complaint[.]") (citation omitted); *Lee v. Visiting Nurse Health System etc.*, 223 Ga. App. 305, 308 (477 SE2d 445) (1996) (statement in affidavit that expert was competent to testify supported conclusion that the affidavit was legally sufficient); *Crook v. Funk*, 214 Ga. App. 213, 215 (2) (447 SE2d 60) (1994) (affidavit was sufficient to show expert's competency, where expert averred that "he was familiar by his education, training, and experience with the degree of care and skill ordinarily employed by medical practitioners under similar conditions and circumstances as that presented by [the plaintiff]").

Accordingly, the trial court erred in deeming Dr. Farmer incompetent to testify under the liberal pleading rules applied to a motion to dismiss, given his affirmative statement regarding his competence to testify in this negligence matter, along with his extensive teaching and practical experience with post-operative obstetric and gynecological patients in hospital settings. See *Houston*, 295 Ga. App. at 679 (1) (although expert nurse "never worked as a triage nurse in an emergency room," "the

relevant area of nursing practice was the assessment and triage of acute patients, and [the expert's] affidavit and curriculum vitae showed that she had ongoing practical experience in the area of patient triage, as well as many years of practical and teaching experience in the area of supervising patient care, which presumably included assessing the acuteness of a patient's condition"). Because plaintiffs have met the threshold pleading requirements of OCGA § 9-11-9.1 (a), we reverse the grant of defendants' motion to dismiss the complaint.

*Judgment reversed. Brown, C. J., and Watkins, J., concur.*